UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ABERDEEN ENTERPRISES, INC.<br><br>Debtor.<br><br>LOUISE BLOUIN AND ABERDEEN ENTERPRISES (BVI) LTD,<br><br>Appellants,<br><br>v.<br><br>BAY POINT CAPITAL PARTNERS II, L.P. AND ABERDEEN ENTERPRISES, INC.,<br><br>Appellees. | Case No.: 2:24-cv-07744-GRB<br><br>Bankruptcy Appeal |

**BAY POINT CAPITAL PARTNERS II, LP'S RESPONSE TO APPELLANTS' AMENDED MOTION TO APPEAL OBJECTION OF THE ABERDEEN DEBTOR SEEKING TO REDUCE THE CLOSING PAYMENTS RECEIVED BY BAY POINT CAPITAL PARTNERS II, L.P. CONSISTENT WITH THE ASSIGNED JGB FORECLOSURE JUDGMENT**

Bay Point Capital Partners II, LP ("Bay Point") submits this Response to Appellants' *Amended Motion to Appeal Objection of the Aberdeen Debtor Seeking to Reduce the Closing Payments Received by Bay Point Capital Partners II, L.P. Consistent with the Assigned JGB Foreclosure Judgment* [District Court D.I. 13] filed by Louise Blouin ("Blouin") on January 9, 2025[1] (the "Motion"). Blouin's Motion is replete with a number of spurious and meritless allegations, including assertions that Bay Point (i) misused the chapter 11 process, "exploiting the

[1] Although filed on January 9, the document was not entered on the Court's docket, nor served on Bay Point, until January 13, 2025.

court proceedings for [its] own benefit" (Motion at 15-16); (ii) failed to provide information regarding the outstanding balance of indebtedness owed to it (Motion at 10, 13); (iii) misrepresented the amount of indebtedness owed to it in violation of generally accepted accounting principles (GAAP) and, possibly, criminal statutes (Motion at 9-10); (iv) charged default interest at the unlawful and usurious rate of 24% per annum (Motion at 4-5); and used fraudulent tactics to attempt to silence Blouin during the case (Motion at 11-12).[2]

None of these issues were raised by the *debtor* in its objection seeking to reduce the closing payments received by Bay Point under the plan, and thus are not before this Court on appeal.[3] Moreover, Blouin's allegations are completely repudiated by the bankruptcy court's findings of fact in its order confirming the debtor's plan. *See Findings of Fact, Conclusions of Law, and Order (I) Confirming Bay Point Capital Partners II, LP's and the Debtors' Second Amended Joint Liquidation Plan Under Chapter 11 of the Bankruptcy Code; (II) Approving Bay Point Capital Partners II, LP's and the Debtors' Joint Disclosure Statement; and Approving the Sale Transactions (as defined herein); and (III) Granting Related Relief* [D.I. 248] (the "Confirmation Order"), a copy of which is attached as Exhibit A.

With respect to allegations that Bay Point failed to provide information, and misrepresented the amount of indebtedness owed to it under the plan, Judge Trust found that the Disclosure

---

[2] Far from being silenced during the chapter 11 proceedings, Blouin filed numerous papers in the bankruptcy court raising objections and asserting grievances, appeared at virtually all hearings, and was represented by counsel in asserting objections at the hearing on confirmation of the debtors' plan of liquidation. The volume of papers filed by Blouin in the bankruptcy case resulted in Judge Trust issuing an order, *sua sponte*, on November 1, 2024 barring her from submitting additional pleadings in the case for ninety (90) days pending resolution of the matters raised in the papers previously filed by her. *See Order Concerning Filing of Motions* [D.I. 363].

[3] Contrary to Blouin's assertions regarding Bay Point's alleged misrepresentation of the amount of indebtedness owed to it, and the alleged charge of default interest at 24% per annum, the debtor and Bay Point stipulated for purposes of the objection that: "The Bay Point Debt (as defined in the Joint Plan) was not repaid in full from the proceeds of sale under the Joint Plan, and Bay Point received no payment on account of default interest and late charges." *See Bay Point Capital Partners II, LP and Aberdeen Enterprises, Inc.'s Joint Statement of Undisputed Material Facts* [D.I. 326] at ¶ 26.

Statement filed in conjunction with the plan was "comprehensive and contains adequate information", and that Bay Point and the other plan proponents had "disclosed all material facts regarding the Plan, the Sale Transactions, the Disclosure Statement, and the adoption, implementation, and execution of the other matters provided for under the plan …" *See Confirmation Order* at ¶¶ 9, 86.

As to Blouin's assertions that Bay Point utilized fraudulent tactics and exploited the chapter 11 process for its own benefit, Judge Trust found that:

> The Plan was proposed in good faith. The Plan has the legitimate purpose of selling the Properties and distributing the Sale proceeds with the goal of maximizing the returns available to creditors. Additionally, none of the mechanisms contained in the Plan are "forbidden by law." The Plan is consistent with the objectives and purposes of the Bankruptcy Code and was made with honesty and good intentions and with a basis for expecting that, under the circumstances, it was the best means for maximizing any recovery for the Debtors' creditors.

*Confirmation Order* at ¶ 54.

The bankruptcy court further found that Bay Point and the other plan proponents:

> … have acted in good faith in proposing and negotiating the Plan. The Plan Proponents will continue to be acting in good faith if they proceed to consummate the Plan and the agreements, transactions, and transfers contemplated thereby and take the actions authorized and directed by this Confirmation Order.

*Confirmation Order* at ¶ 87.

To the extent Blouin took issue with these findings, her remedy was to pursue an appeal of the Confirmation Order. She failed to do so, and therefore has no right to re-litigate these issues in this, or any other, proceeding.

The only issue raised by the debtor in its objection to the payments made to Bay Point under the plan was whether those payments were required to conform to the payment mechanism in the pre-petition New York state court foreclosure judgment. That is the only issue that Blouin

conceivably could pursue on appeal.[4] Notwithstanding that each of Blouin's allegations are baseless and untrue, they are irrelevant to this sole issue.

Because no appeal had been taken from the order confirming the plan, Judge Trust held that the debtor was precluded by principles of *res judicata* and judicial estoppel from pursuing its claim to recover payments made to Bay Point under the plan. Blouin, who was represented by counsel at the confirmation hearing, likewise is precluded from re-litigating that issue, and for that reason, and the reasons set forth in Bay Point's motion to dismiss, the Court should enter an order dismissing the appeal.

[Signatures on Next Page]

---

[4] It is a well-established rule of practice in federal courts that issues not litigated in the trial court cannot be raised for the first time on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976). While there are exceptions for purely legal issues and issues not requiring additional factual development the proper resolution of which is beyond all doubt – *see, e.g., In re McLean Indus., Inc.*, 30 F.3d 385, 387 (2d Cir. 1994) and *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2 1130, 1145 (5th Cir. 1981) – none of those exceptions apply to the other issues raised by Blouin in this appeal, all of which are entirely factual and were not raised by the debtor in the proceedings below.

Dated: January 21, 2025

Respectfully submitted,

/s/ Alan R. Lepene
Alan R. Lepene (*admitted pro hac vice*)
**THOMPSON HINE LLP**
3900 Key Center, 127 Public Square
Cleveland, OH 44114-1291
Office: 216.566.5520
Fax: 216.566.5800
*Alan.Lepene@thompsonhine.com*

John C. Allerding (*admitted pro hac vice*)
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326
Office: 404.407.3676
Fax: 404.541.2905
John.Allerding@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. Bankr. P. 8015(h) and E.D.N.Y. Local Rule 7.3(c) because, excluding the parts of the document exempted by those Rules, this document contains 905 words.

2. This document complies with the typeface requirements of E.D.N.Y. Local Rule 7.3(b) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

/s/ Alan R. Lepene Dated: January 21, 2025
Alan R. Lepene