FILED
CLERK

4:21 pm, Sep 04, 2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

ABERDEEN ENTERPRISES, INC.,

         Debtor,
------------------------------------------------------------------X
LOUISE BLOUIN AND ABERDEEN
ENTERPRISES (BVI) LTD,

         Appellants,

  -against-

BAY POINT CAPITAL PARTNERS II, LP,

         Appellee.

------------------------------------------------------------------X

**MEMORANDUM & ORDER**
CV 24-7744 (GRB)

**GARY R. BROWN, United States District Judge:**

  The instant case is an appeal from the bankruptcy proceeding of debtor Aberdeen Enterprises, Inc. ("Aberdeen" or "debtor") under chapter 11 of the Bankruptcy Code. DE 1. Appellants Louise Blouin[1] and Aberdeen Enterprises (BVI) Ltd[2] appeal from a final order of the Honorable Alan S. Trust, Chief United States Bankruptcy Judge for the Eastern District of New York, overruling the debtor's claim objection. In its claim objection, Aberdeen sought to reduce and/or reallocate the closing payments made to appellee Bay Point Capital Partners II, LP ("Bay

---

[1] Appellant Louise Blouin owns and controls Aberdeen Enterprises, Inc. DE 13 at 107; DE 14-1 at 49.

[2] Appellant Aberdeen Enterprises (BVI) Ltd is Aberdeen's off-shore, non-debtor corporate parent. DE 7 at 2. As a preliminary matter, Aberdeen Enterprises (BVI) Ltd's appeal is dismissed because appellant, a limited liability company, is not represented by counsel. As a limited liability company, Aberdeen Enterprises (BVI) Ltd may appear in federal court only through a licensed attorney and thus may not represent itself in this action. *Lattanzio v. COMTA*, 481 F.3d 137, 139-140 (2d Cir. 2007) ("Because both a partnership and a corporation must appear through licensed counsel, and because a limited liability company is a hybrid of the partnership and corporate forms, a limited liability company... may appear in federal court only through a licensed attorney."). Accordingly, Bay Point's motion to dismiss Aberdeen Enterprises (BVI) Ltd's appeal is granted. As such, the Court considers Bay Point's motion to dismiss solely as to appellant Blouin (hereinafter "Blouin" or "appellant"), who is proceeding *pro se* in this appeal.

1

Point" or "appellee") under a joint plan of liquidation filed by Bay Point, Aberdeen, and Aberdeen's affiliate, Brickchurch Enterprises, Inc. ("Brickchurch") and approved by Judge Trust, arguing that the payment provisions in the plan were inconsistent with the sale provisions set forth in a pre-petition state court foreclosure.

Bay Point moves to dismiss the instant appeal, asserting that dismissal is appropriate because: (1) appellant failed to timely comply with the filing requirements under Rule 8009 of the Federal Rules of Bankruptcy Procedure; and (2) appellant's claims for relief are barred by the doctrine of *res judicata*.  For the reasons set forth below, the Court agrees on both grounds and dismisses the instant appeal.

## BACKGROUND

The debtors in the main bankruptcy case were Aberdeen and Brickchurch.  DE 7-1 at 7. Aberdeen and Brickchurch's main assets were two contiguous oceanfront properties comprising a four-acre estate in Southampton, New York, and the debtors were co-borrowers on a loan secured by the properties.  DE 7-1 at 8.  Blouin owned and controlled Aberdeen and Brickchurch as well as the two properties.  DE 13 at 107.  In July 2018, JGB Partners, LP and its related companies (collectively "JGB") loaned the debtors $26 million, secured by both debtors' properties, with a first mortgage against the Brickchurch property, and a second lien mortgage against the Aberdeen property.[3]  DE 7-1 at 8; DE 13 at 137.

In November 2019, JGB commenced a foreclosure action in state court, seeking to foreclose on the Aberdeen lien.  DE 7-1 at 8.  On February 2, 2022, the state court entered a foreclosure judgment in the JGB foreclosure action, which was stayed on April 30, 2022, when Brickchurch filed a chapter 11 petition in the United States Bankruptcy Court for the Eastern

---

[3] The Aberdeen second lien was junior to a lien held by Morgan Stanley Private Bank, NA ("Morgan Stanley").  DE 7-1 at 8.

District of New York under Case No. 22-70914. DE 7-1 at 8; DE 14-1 at 1. On August 2, 2023, Aberdeen filed a separate chapter 11 petition under Case No. 23-72834 (collectively with the Brickchurch case, the "chapter 11 cases"). DE 7-1 at 11; DE 14-1 at 1. On September 6, 2023, the Bankruptcy Court entered an Order granting the motion for the joint administration of the debtors' chapter 11 cases. *Id*.; DE 7-1 at 11; DE 14-1 at 1. After multiple hearings, Aberdeen and Brickchurch filed a joint chapter 11 plan, which provided for the sale of both properties to satisfy the claims of the estates. DE 7-1 at 11; DE 14-1 at 2. The debtors filed a joint motion to sell both properties pursuant to an auction process. DE 7-1 at 11-12; DE 14-1 at 2.

After a hearing held in February 2024, Judge Trust found that the debtors' properties "had been extensively marketed, the sale process followed by the parties was fair and vigorous, and resulted in the highest and best achievable value for the [p]roperties." DE 14-1 at 4. Judge Trust approved the sale transactions, and the debtors and Bay Point entered a consensual joint plan regarding the approved sales and the distribution of the sales proceeds.[4] DE 7-1 at 12-13. On March 1, 2024, the Bankruptcy Court confirmed the debtors' and Bay Point's second amended joint liquidating plan (the "Joint Plan of Liquidation") and entered an Order of Confirmation. DE 20 at 239. The Order of Confirmation expressly stated that it was "a final order within the meaning of 28 U.S.C. § 158(a) and the period in which an appeal must be filed shall commence immediately upon the entry thereof." DE 7-1 at 14; DE 14-1 at 42, ¶ 116. No notice of appeal was filed. *Id.*

On April 5, 2024, Aberdeen filed a claim objection seeking to reduce and/or reallocate

---

[4] Section 5.8 of the joint plan provided that unless otherwise provided in the plan, the sales proceeds realized from the Aberdeen property, then estimated at $45 million (less closing adjustments), would be allocated approximately $16.2 million to Bay Point for amounts due under the Morgan Stanley judgment, and approximately $26.7 million to Bay Point for amounts due under the JGB judgment. DE 7-1 at 13. The proceeds allocable to the Brickchurch sale of approximately $43.3 million (less closing adjustments) would be distributed approximately $30.5 million to Bay Point for amounts due under the JGB judgment and approximately $10.2 million for amounts due under the loan documents. *Id.*

3

the closing payments that Bay Point received, maintaining that the payments should be consistent with the JGD foreclosure judgment.  DE 1-12 at 49; DE 20 at 240.  Bay Point filed its response in opposition to the Aberdeen objection on May 8, 2024, and Aberdeen filed its reply on May 10, 2024.  DE 20 at 240.  The Bankruptcy Court held a hearing, and on October 9, 2024, the Bankruptcy Court issued an oral decision overruling the Aberdeen debtor's claim objection.  DE 7-1; DE 20 at 240.  In its ruling, the bankruptcy court found that the Order of Confirmation approving the distribution of funds to Bay Point under the Joint Plan of Liquidation precluded Aberdeen from asserting that the plan payments were required to conform to the provisions of the pre-petition state court foreclosure judgment.  Specifically, the Bankruptcy Court made clear that:

> [w]hat Aberdeen has failed or refused to recognize is that the $26,892,813.08 distributed to Bay Point from the Aberdeen sales proceeds was done expressly pursuant to the terms of the heavily negotiated joint consensual plan proposed by the Debtors with Aberdeen and confirmed by the Court.
>
> Aberdeen appears to be fixated on its misconstrued argument that despite the detailed agreements set out in the water flow and allocation of proceeds set out in the part[ies'] heavily negotiated joint consensual plan, that somehow the pre-petition JGB foreclosure judgment is the guiding and directing force for the allocation of the sale proceeds.
>
> It is well known that a bankruptcy court's order of confirmation is a final judgment which is entitled to *res judicata* effect . . . *Res judicata* bars parties from relitigating issues that have been previously decided by the Court or could have been raised prior to entry of the final order.

DE 7-1 at 15-16.  The Bankruptcy Court entered a final order overruling Aberdeen's claim objection on October 22, 2024, incorporating by reference the findings of fact and conclusions of law made by the Court at its oral ruling on October 9, 2024.  DE 14-1; Bankr. DE 354.

On November 2, 2024, Blouin and Aberdeen Enterprises (BVI) Ltd filed a Notice of Appeal pursuant to 28 U.S.C. § 158 in the United States District Court for the Eastern District of New York from the final order.  Bankr. DE 354.  On the same day, an Appeal Deficiency Notice

4

was entered on the Bankruptcy Court's docket report for failure to pay the requisite filing fee. Bankr. DE 366. The Notice of Appeal was subsequently entered on November 6, 2024, and the Bankruptcy Court provided a notification to the parties regarding the appeal. Bankr. DE 365. The document, entitled "Notice to Parties of Requirements, Deadlines" informed the appellant of her obligations under Bankruptcy Rule 8009, including the requirement to file a designation of the record on appeal and statement of issues to be presented within fourteen (14) days of the notice of appeal. *Id.* Blouin failed to comply with the requirements of Bankruptcy Rule 8009(a). On December 2, 2024, the docket report in this Court reflected a "Notice of Bankruptcy Incomplete Record Received." DE 3; Bankr. DE 379.

On December 16, Bay Point filed a motion to dismiss the appeal, DE 7, and Blouin filed her response on December 29, 2024, DE 10. Bay Point thereafter filed a reply in further support of its motion to dismiss, DE11, and Blouin filed an amended motion to appeal, DE 16, 17, 19, 20.

Familiarity with the factual background, procedural history in both the Bankruptcy Court and this Court, and the parties' arguments are assumed. As discussed below, Bay Point's motion is granted, and the appeal is dismissed.

## DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to

5

the courts of appeals from district courts." 28 U.S.C. § 158(c)(2).  On an appeal the district court may "affirm, modify, or reverse a bankruptcy court's judgment, order, or decree" or it may remand with instructions for further proceedings.  Fed. R. Bankr. P. 8013.

A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact under a clearly erroneous standard.  *See In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009).[5]  A finding is "clearly erroneous" when the reviewing court is left with the "definite and firm conviction that a mistake has been made."  *District Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010).  The clearly erroneous standard requires "strong deference" to "findings of fact based on credibility assessments of witnesses [the court] has heard testify."  *In re Pisculli*, 426 B.R. 52, 59 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011).  Moreover, "[a]n appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court might give the facts another construction [and] resolve the ambiguities differently."  *Id.* at 68.

Finally, discretionary rulings of a bankruptcy court are reviewed for abuse of discretion.  *In re Tingling*, 990 F.3d 304, 307 (2d Cir. 2021).  "A bankruptcy court abuses its discretion when its ruling (1) rests on an error of law . . . or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions."  *In re Fletcher Int'l, Ltd.*, 661 F. App'x 124, 126 (2d Cir. 2016).

**B.  Rule 8009 of the Federal Rules of Bankruptcy Procedure**

---

[5]Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes and alterations.

Bay Point moves to dismiss the instant appeal on the ground that appellant failed to comply with the filing requirements under Rule 8009 of the Federal Rules of Bankruptcy Procedure.

Bankruptcy Rule 8009(a) directs that within 14 days after filing the notice of appeal, the appellant must file with the bankruptcy clerk, and serve on the appellee, a designation of the items to be included in the record on appeal and a statement of the issues to be presented ("Designation and Statement"). Fed. R. Bankr. P. 8009(a)(1). Filing a Designation and Statement is mandatory. *In re Lynch*, 430 F.3d 600, 603 (2d Cir. 2005). If an appellant fails to timely file a Designation and Statement, a district court may extend an appellant's time to do so where "the failure to act [in a timely manner] . . . was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1)(B); *see In re Lynch*, 430 F.3d at 603. A bankruptcy appeal cannot proceed without a Designation and Statement. *See In re Lynch*, 430 F.3d at 605. Consequently, where "a party fails to file a Designation and Statement on time and an untimely filing is disallowed because no excusable neglect has been shown, the appeal has to be at an end." *Id.*

In determining whether to permit a late filing, the Second Circuit has explained that the following four factors identified by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 382 (1993) are relevant in assessing what constitutes excusable neglect, with the third factor weighing most heavily in the analysis:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith. These factors do not carry equal weight. This court has adopted a hard line to applying *Pioneer* that emphasizes the reason for the delay, and we have therefore cautioned that the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule. Indeed, affording dispositive weight to that factor accords with our precedents, which have described the reason for the delay as the most important *Pioneer* factor. For that reason, a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.

*In re Ditech Holding Corporation*, No. 24-1196-bk, 2025 WL 783639, at *2 (2d Cir. Mar. 12, 2025). Although *pro se* status "is relevant in determining whether there has been excusable neglect," such status does not by itself excuse a litigant from complying with procedural rules. *In re Residential Capital, LLC*, No. 14 Civ. 9723 (PAE), 2015 WL 405570, at *2 (Bankr. S.D.N.Y. Jan. 30, 2015); *see McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). Thus, the absence of representation does not qualify as excusable neglect. *Straehle v. INA Life Ins. Co.*, No. 01-CV-7180 (FLB), 2005 WL 3388612, at *3 (E.D.N.Y. Dec. 8, 2005) (*pro se* status and a "garden variety claim of ignorance of the law" do not constitute excusable neglect).

In this case, Blouin's failure to comply with Rule 8009 warrants dismissal of this appeal. Blouin's Notice of Appeal was docketed on November 6, 2024, and on the same day, the Bankruptcy Court provided notice to the parties of their obligations, including that appellant was required to file and serve on Bay Point a Designation and Statement. By operation of Bankruptcy Rule 8009, Blouin's Designation and Statement was due no later than November 20, 2024. To date, appellant has not filed a Designation.

Moreover, Blouin has not offered any explanation for her failure to file a Designation and Statement, leaving the Court with no basis for finding whether this delay was "within [her] reasonable control." Blouin mistakenly contends in her response to Bay Point's motion, that the "procedural requirements for transmission or additional filings" are "technicalities" which "do not negate [her] substantive rights." DE 10 at 4. Although courts have "considerable sympathy for those who, through mistakes . . . lose substantial rights" due to time limits established by law, the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355,

8

363 (2d Cir. 2003). The filing requirements of Bankruptcy Rule 9006(b)(1) are "quite clear." *See In re Lynch*, 430 F.3d at 604 (citing Rule 8006, the predecessor to Rule 8009). So too was the Bankruptcy Court's Notice on November 6, 2024, advising appellant, *inter alia*, of the prerequisites for perfecting her appeal, including the requirement to file and serve a Designation and Statement within fourteen days after filing the notice of appeal. Nonetheless, the fact that Blouin has not provided any reason for the failure to file a Designation and Statement weighs strongly against a finding of excusable neglect. *See In re Lynch*, 430 F.3d at 604 (holding "failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect"); *see Pioneer Inv. Servs. Co.,* 507 U.S. at 382; *see also In re Kollel Mateh Efraim, LLC*, 582 F. App'x 61, 62 (2d Cir. 2014).

The remaining *Pioneer* factors do not tip the balance in Blouin's favor. The "length of the delay" is significant: Blouin's Designation and Statement are now overdue by more than eight months, and in the interim, Blouin has filed other documents with the Bankruptcy Court and this Court. *See, e.g., Babayoff v. Stevens,* No. 23-CV- 252 (RER), 2024 WL 1798182, at *3 (E.D.N.Y. Apr. 25, 2024) (finding appellant failed to demonstrate excusable neglect where to date he had not filed a Designation and Statement but had filed other applications with the court); *Albicocco v. Rossini*, No. 06- CV-3409 (JFB), 2006 WL 2376441, at *7 (E.D.N.Y. Aug. 16, 2006) (finding that an appellant's delay of approximately seventeen days in filing a Designation and Statement was not the result of excusable neglect). Even if Blouin acted in good faith and even if the prejudice resulting from her delay were minimal, she has not demonstrated excusable neglect for her failure to file a Designation and Statement in this appeal. *See id.* at *7-8.

Under these circumstances, where Blouin has failed to comply with the clear dictates of Bankruptcy Rule 8009 and has not attempted to show excusable neglect for her failure to do so, the Court grants Bay Point's motion to dismiss the appeal.

### C. Res Judicata

In the alternative, Bay Point moves to dismiss the instant appeal on the ground that appellant's claims for relief are barred by *res judicata*.

The doctrine of *res judicata*, or claim preclusion, holds that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Sikorsky v. City of Newburgh*, 136 F.4th 56, 62 (2d Cir. 2025); *see Brown Media Corp. v. K&L, Gates LLP*, 854 F.3d 150, 157 (2d Cir. 2017). To determine whether *res judicata* bars a subsequent action, the Court considers whether "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Sikorsky*, 136 F.4th at 62; *see also Brown*, 854 F.3d at 157 (*Res judicata* bars a subsequent action when (i) there was a prior decision that was a final judgment on the merits; (ii) the litigants are the same parties or their privies; (iii) the judgment was entered by a court of competent jurisdiction; and (iv) the causes of action are the same).

The doctrine of *res judicata* applies to orders confirming chapter 11 plans. *In re American Preferred Prescription, Inc.*, 255 F.3d 87, 92 (2d Cir. 2001) ("The confirmation of a plan in a [c]hapter 11 proceeding is an event comparable to the entry of a final judgment in an ordinary civil litigation."); *see Community Bank, N.A. v. Riffle*, 617 F.3d 171, 173-74 (2d Cir. 2010) (bankruptcy order of confirmation is final); *see also Ultimate Opportunities, LLC v. Plan Administrator*, No. 20-CV-4927 (AMD), 2021 WL 4439978, at *7 (E.D.N.Y. Sept. 28, 2021) (a bankruptcy court's "confirmation order constitutes a final judgment on the merits by a court of competent jurisdiction."). Moreover, pursuant to Section 1141(a) of the Bankruptcy Code, "[a]n order of confirmation binds the debtor and its creditors whether or not they have accepted the

10

confirmed plan." *In re Celsius Network LLC*, 659 B.R. 850, 863 (S.D.N.Y. 2024); *see In re Ionosphere Clubs, Inc.*, 262 B.R. 604, 664 (S.D.N.Y. 2001) ("Pursuant to 11 U.S.C. § 1141(a), a confirmed plan of reorganization is binding on all parties."). The "finality interests of *res judicata* are particularly important in the bankruptcy context, where numerous claims and interests are gathered, jostled, and are determined and released." *In re Celsius Network LLC*, 659 B.R. at 863.

In *Brown*, the Second Circuit acknowledged that "the standard *res judicata* analysis can be an awkward fit when applied," as in this case, "to bankruptcy proceedings." *Brown*, 854 F.3d at 157. As the Court explained:

> Unlike a typical lawsuit, where one party brings an action against another, a bankruptcy proceeding provides a forum for multiple parties—debtors, creditors, bidders, etc.—to sort out how to allocate, among other things, a debtor's assets. . . In the bankruptcy context, therefore, instead of examining whether a subsequent lawsuit asserts claims that could have been included as part of a previous lawsuit, courts have assessed whether a new action seeks to bring claims that could have been raised and litigated within the scope of the bankruptcy proceeding.

*Id.* at 158. Courts "ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan." *Brown*, 854 F.3d at 157; *see Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869 874 (2d Cir. 1991). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). The critical question for *res judicata* purposes, however, is "whether the party could or should have asserted the claim in the earlier proceeding." *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006). Thus, "[w]hen a bankruptcy court enters a confirmation order, it renders a final judgment, which, like any other final judgment, has *res judicata* effect, bar[ring] all challenges to the plan that

11

could have been raised. Challengers must instead raise any issues beforehand and by objecting to confirmation." *Wyse v. Metropolitan Comm'l Bank*, No. 24 Civ. 9108 (PAE), 2025 WL 2208161, at *7 (S.D.N.Y. Aug. 4, 2025).

Here, the Confirmation Order was a final judgment on the merits issued by the Bankruptcy Court, a court of competent jurisdiction. Blouin was a party to the proceedings in Aberdeen's chapter 11 case and was represented by counsel at the hearing on the confirmation of the Joint Plan of Liquidation. Judge Trust issued an extremely thorough and comprehensive Confirmation Order setting forth his findings of fact and conclusions of law. Moreover, the record clearly reflects that Judge Trust invested substantial effort and time, applying considerable diligence and fairness to this matter.

Contrary to Blouin's assertions in her appeal in this case that Bay Point failed to provide information and misrepresented the amount of indebtedness owed under the plan, Judge Trust found that the Disclosure Statement filed with the plan was "comprehensive" and that Bay Point and the other plan proponents had "disclosed all material facts regarding the Plan, the Sale Transactions, the Disclosure Statement, and the adoption, implementation, and execution of the other matters provided for under the plan." DE 14-1 at ¶¶ 9, 86. Blouin's allegations of bad faith and fraud with respect to the Plan are belied by Judge Trust's findings that:

> The Plan was proposed in good faith. The Plan has the legitimate purpose of selling the Properties and distributing the Sale proceeds with the goal of maximizing the returns available to creditors. Additionally, none of the mechanisms contained in the Plan are "forbidden by law." The Plan is consistent with the objectives and purposes of the Bankruptcy Code and was made with honesty and good intentions and with a basis for expecting that, under the circumstances, it was the best means for maximizing any recovery for the Debtors' creditors.

DE 14-1 at ¶ 54. Indeed, the Bankruptcy Court further found that Bay Point and the other plan proponents:

12

> … have acted in good faith in proposing and negotiating the Plan. The Plan Proponents will continue to be acting in good faith if they proceed to consummate the Plan and the agreements, transactions, and transfers contemplated thereby and take the actions authorized and directed by this Confirmation Order.

DE 14-1 at ¶ 87. Judge Trust's Confirmation Order explicitly stated that it was a "final order" and that the time to file an appeal "commenced immediately" upon its entry. DE 14-1 at ¶ 116. Blouin did not file an appeal despite the opportunity to do so. At the hearing to consider Blouin's claim objection, the Bankruptcy Court held that the appellant was precluded by *res judicata* from re-litigating the issue of the payment provisions under the Plan because the payments to Bay Point under the Plan had been made pursuant to a final order of the Bankruptcy Court. DE 7-1.

In her present appeal to this Court, Blouin is again challenging the payment provisions of the Joint Plan approved by the Bankruptcy Court in the Confirmation Order. Such a challenge, if successful, would destroy the rights granted to Bay Point under the Joint Plan of Liquidation and would invalidate the enforceability of the reorganization plan. Hence, Blouin's attempt to relitigate the issues resolved by the Confirmation Order is barred by *res judicata*. The Court accordingly grants Bay Points' motion to dismiss the appeal on this alternative ground.

## CONCLUSION

Based on both alternative reasons set forth above, the Court dismisses the appellant's appeal. The Clerk of the Court shall enter judgment accordingly and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
September 4, 2025

                                         /s/ Gary R. Brown
                                         GARY R. BROWN
                                         United States District Judge